[Cite as *In re N.G.*, 2013-Ohio-192.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: N.G. | : | JUDGES: |
|  | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2012-CA-104 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil appeal from the Fairfield County Court of Common Pleas Court, Juvenile Division, Case No. 2008AB196 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 16, 2013 |
| APPEARANCES: | |

| | |
|---|---|
| For: Stephanie Griffin | For: Child Protective Services |
| WILLIAM J. HOLT<br>Box 2252<br>2140 Granville Pike<br>Lancaster, OH 43130 | JOCELYN S. KELLY<br>Assistant County Prosecutor<br>239 West Main Street<br>Lancaster, OH 43130 |
| For: N.G. | Guardian Ad Litem |
| JESSICA MONGOLD<br>123 South Broad Street<br>Suite 206<br>Lancaster, OH 43130 | MICHELLE EDGAR<br>414 East Main Street<br>Lancaster, OH 43130 |
| | For: J.G.<br>JAMES FIELDS<br>117 West Main Street, Ste. 206<br>Lancaster, OH 43130 |

*Hoffman, J.*

**{¶1}** Mother, Stephanie Griffin ["Mother"] appeals the August 20, 2012, judgment entry of the Fairfield County Court of Common Pleas, Juvenile Court Division, which terminated her parental rights with respect to her minor children C.G.,[1] P.G.[2] and N.G. and granted permanent custody of the children to appellee, Fairfield County Child Protective Services (hereinafter "FCCPS").

## I. PROCEDURAL HISTORY

**{¶2}** C.G. was born November 2, 1995. P.G. was born December 18, 1998. N.G. was born October 26, 2001.

**{¶3}** On June 12, 2008, C.G., P.G. and N.G. were placed in the temporary shelter custody of FCCPS. On September 30, 2008, C.G., P.G. and N.G. were found to be dependent minors and were placed in the temporary custody of FCCPS. On October 20, 2009, the temporary custody of C.G., P.G. and N.G. with FCCPS was terminated, they were returned to the custody of Mother, and they were placed under court ordered protective supervision with FCCPS.

**{¶4}** On February 3, 2011, C.G., P.G. and N.G. were again placed in the temporary custody of FCCPS. On May 31, 2011, the temporary custody of C.G., P.G. and N.G. with FCCPS was terminated, they were returned to the custody of Mother, and they were placed under court ordered protective supervision with FCCPS.

---

[1]C .G. has filed a separate appeal from the decision in Fairfield County Court of Common Pleas, Juvenile Court Division, Case No. 2008 AB 194 *See, In re P.G.,* 5th District No. 2012 CA 00102.

[2] P.G. has filed a separate appeal from the decision in Fairfield County Court of Common Pleas, Juvenile Court Division, Case No. 2008 AB 195 *See, In re P.G.,* 5th District No. 2012 CA 00103.

{¶5} On September 22, 2011, C.G., P.G. and N.G. were again placed in the temporary shelter custody of FCCPS. On March 22, 2012, C.G., P.G. and N.G. were placed in the temporary custody of FCCPS.

{¶6} On May 8, 2012, the motion for permanent custody was filed. The trial on the motion for permanent custody was held on May 29, 2012. The Court heard testimony from April Wagner, the caseworker for FCCPS, and from Mother. The Court noted that on May 29, 2012, Michelle Edgar filed the report of the Guardian Ad Litem, which supported the Agency's motion for permanent custody. The Court further noted pursuant to Ohio Revised Code Section 2151.414(C), the Guardian Ad Litem report was timely filed and no evidence was presented that either parent or child was prejudiced by the report being filed on May 29, 2012. At the conclusion of all of the testimony, the Court ordered the parties to provide proposed findings of fact and conclusions of law to the Court.

### A. The Permanent Custody Trial

{¶7} Mother attended the trial on the motion for permanent custody held on May 29, 2012. Evidence was presented Mother has known since September 2011, that absent substantial compliance by Mother with the case plan, the direction of FCCPS would be towards permanent custody for C.G., P.G. and N.G.

{¶8} FCCPS had concerns regarding Mother's issues with substance abuse, employment, and stable housing. FCCPS required Mother to submit to random screens for drugs and/or alcohol, successfully complete treatment for drug and/or alcohol issues at the Recovery Center, obtain and maintain employment, obtain and maintain stable housing, and visit with her children.

## 1. Drug screening

{¶9}   In September 2011, Mother missed nine (9) screens for drugs and/or alcohol. Due to lack of compliance, she was suspended from the screening program from September 28, 2011 to October 12, 2011.

{¶10} On October 17, 2011, Mother re-engaged with the screening program and provided a negative screen for drugs and/or alcohol. On October 19, 2011, she again provided a negative screen for drugs and/or alcohol. However, Mother then missed requested screens on October 25, 2011, October 26, 2011, October 27, 2011, October 28, 2011, and October 31, 2011. Accordingly, Mother was again suspended from the screening program due to lack of compliance.

{¶11} Mother provided one screen on November 7, 2011. From November 7, 2011 to February 15, 2012, Mother provided no screens for drugs and/or alcohol, and was again suspended from the screening program due to lack of compliance.

{¶12} On February 16, 2012, Mother tested positive for marijuana and suboxone. Although she had a valid prescription for suboxone in the past, there was no evidence presented Mother had a valid prescription for suboxone or any prescription for marijuana on or about February 16, 2012.

## 2. Treatment

{¶13} Prior to September 2011, Mother was consistently attending treatment appointments at the Recovery Center and was attending 12-step meetings at least three times per week.

**{¶14}** From September 2011 to April 2012, Mother did not attend any treatment appointments at the Recovery Center and admitted to using illegal substances throughout that time.

**{¶15}** From October 2011 to February 2012, Mother admitted she did not attend any 12-step meetings.

**{¶16}** Mother did attend an emergency appointment at the Recovery Center on May 17, 2011, but is required to attend three (3) community resource group sessions before she can be readmitted into a treatment program.

### 3. Housing

**{¶17}** Prior to September 2011, Mother did have housing through a housing voucher obtained through a community services program. Mother admitted at trial she has not had housing that would be appropriate for her children since January 2012. Mother further admitted she is staying with a friend, but this location is not large enough to accommodate her children. Mother also conceded she is "bouncing around" and she "stays where she can."

### 4. Employment

**{¶18}** Mother had employment until September 2011. Mother claimed at trial she lost her job in September 2011, due to her incarceration in the Fairfield County jail. Mother remained unemployed through February 2012, when she worked for approximately three weeks through a temporary agency. From early March 2012, until the permanent custody trial on May 29, 2012, Mother has been unemployed.

### 5. Mental Health

**{¶19}** During the permanent custody trial, Mother emphasized her need for a psychological evaluation. It was argued that after September 2011, FCCPS should have facilitated a psychological evaluation for Mother. Throughout the history of this case, there have been no recommendations or referrals for a psychological evaluation by any mental health professional providing services to Mother. No motions were made by any party during the course of this case asking the trial court to order a psychological evaluation.

### *B. The Trial Court's Decision*

**{¶20}** The trial court, upon reviewing the evidence, made the following findings,

Since September, 2011, [Mother] has not consistently demonstrated that she is clean and sober. [Mother] has not consistently submitted to screens for drugs and/or alcohol, as outlined in the case plan and ordered by the Court.

* * *

From February 21, 2012 to April 10, 2012, [Mother] missed fifteen (15) requested screens for drugs and/or alcohol. On April 11, 2012, April 12, 2012, April 17, 2012, and April 20, 2012, [Mother] tested positive for marihuana, [Sic.] suboxone, and benzodiazepine. There is no evidence that [Mother] had a valid prescription for marihuana, [Sic.] benzodiazepine or suboxone on or about April, 2012. [Mother] has not submitted to a screen for drugs and/or alcohol since April 20, 2012.

* * *

Fairfield County Child Protective Services still has a legitimate issue concerning [Mother's] ability to remain clean and sober. Not only has her screening history demonstrated that she is not remaining clean and sober, but [Mother] has admitted using marihuana[Sic.] and suboxone as recently as May 28, 2012 (the day before the permanent custody trial) and heroin (her drug of choice) as recently as the week prior to May 29, 2012. On May 29, 2012, [Mother] admitted that she does not have a valid prescription for suboxone. On May 29, 2012, [Mother] that it would not appropriate for her to be caring for her children while she is under the influence of the drugs she has consumed.

* * *

[Mother] had the knowledge, skills and tools of what do to upon a relapse, but chose not to utilize any of her education and experience. [Mother] had all the resources in place to assist her upon a relapse, but chose not to utilize any of her service providers upon her relapse. Due to her substance abuse issues, [Mother] is in no position to properly care for [C.G., N.G. and N.G.] at the present time or in the foreseeable future.

* * *

[Mother] admits that she has not had housing that would be appropriate for her children since January, 2012. [Mother] admits that she is staying with a friend, and that this location is not large enough to accommodate her children. [Mother] admits that she is "bouncing around" and that she "stays where she can."

* * *

From early March, 2012 [sic.] until the permanent custody trial on May 29, 2012, [Mother] has been unemployed. Throughout the history of this case, [Mother] has had occasional employment and has been unable to maintain the employment for more than a few months at a time.

[Mother] also has a⁻ history of not being honest with Fairfield County Child Protective Services about her relationships with men. These relationships with men impact her ability to care for her children and could potentially place the children at risk of harm. This information is relevant to the Court.

During the permanent custody trial, [Mother] emphasized her alleged need for a psychological evaluation. It was argued that after September, 2011, Fairfield County Child Protective Services should have facilitated a psychological evaluation for [Mother]. The status of [Mother's] mental health is unknown, but the record is clear that throughout the history of this case, there have been no recommendations or referrals for a psychological evaluation by any mental health professional providing services to [Mother]. The record is equally clear that no motions have been made by any party, including [Mother], for the Court to order a psychological evaluation. After September, 2011, even if Fairfield County Child Protective Services had believed that a psychological evaluation would have benefitted [Mother], her lack of compliance with other services and her lack of contact with the Agency would have made it unlikely that a

limited resource such as a psychological evaluation would have been scheduled for her. The lack of a psychological evaluation does not impact the finding that Fairfield County Child Protective Services developed a reasonable case plan and exerted diligent efforts to assist [Mother] to remedy the problems that caused C.G., P.G. and N.G. to be removed from the home.

The record indicates that [Mother] was actively engaged in mental health treatment, three (3) times per week, until approximately September, 2011. [Mother] states that the lack of insurance is the reason she has not engaged in mental health services since September, 2011, however there is nothing in the record to indicate that she attempted to obtain mental health services from any other providers. [Mother's] lack of compliance with any aspect of her case plan since September, 2011 is relevant to the Court.

[Mother] has not had a visit with C.G., P.G. and N.G. since October 26, 2011. From October, 2011 to February, 2012, [Mother] has had very little contact with Fairfield County Child Protective Services. This information is relevant to the Court.

{¶21} On March 23, 2012, the trial court filed Findings of Fact and Judgment Entries in each child's case, which terminated Mother's parental rights with respect to her minor children and granted permanent custody of the children to FCCPS.

{¶22} It is from these entries Mother has appealed.

## II. ASSIGNMENT OF ERROR

{¶23} On appeal, Mother asserts the following assignment of error,

{¶24} "IT IS NOT IN THE BEST INTEREST OF A CHILD FOR CHILD PROTECTIVE SERVICES TO BE GRANTED PERMANENT CUSTODY IF CHILD PROTECTIVE SERVICES HAS FAILED TO HAVE A PSYCHOLOGICAL EXAMINATION DONE OF A PARENT WHO IS BONDED TO THE CHILD AND HAS EXHIBITED THE ABILITY TO PARENT THE CHILD."

### A. Burden Of Proof

{¶25} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶26} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It

does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23(1986).

### B. Standard of Review

**{¶27}** The Ohio Supreme Court has delineated our standard of review as follows,

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

**{¶28}** In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence,

freedom from bias or prejudice, opportunity to be informed, the disposition

to tell the truth or otherwise, and the probability or improbability of the

statements made, are all tests of testimonial value. *Where the evidence is*

*in conflict, the trier of facts may determine what should be accepted as the*

*truth and what should be rejected as false.* See *Rice v. City of Cleveland*,

114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

### III. Requirements for Permanent Custody Awards

**{¶29}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶30}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the

temporary custody of one or more public children services agencies or

private child placing agencies for twelve or more months of a consecutive

twenty-two-month period, or has not been in the temporary custody of one

or more public children services agencies or private child placing agencies

for twelve or more months of a consecutive twenty-two-month period if, as

described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶31} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**A. Parental Placement within a Reasonable Time- R.C. 2151.414(B) (1) (a).**

**{¶32}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates if the court makes a finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.,* 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow*, 4th Dist. No. 98 CA 6, 1998 WL 655414(Sept. 21, 1998); *In re: Butcher*, 4th Dist. No. 1470, 1991 WL 62145(Apr 10, 1991).

**{¶33}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.052907.07, 2907.08, 2907.09, 2907.12, 2907.21,2907.22, 2907.23, 2907.252907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12,2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the

parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

(7) The parent has been convicted of or pleaded guilty to one of the following:

* * *

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent

to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

{¶34} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(E)(1), (4) and /or (16). The trial court further found that N.G. could not be placed with Mother within a reasonable time or should not be placed with her.

{¶35} As set forth above, we find the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the Guardian Ad Litem for the children, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶36} N.G. loves her Mother and her Mother loves her and has developed a bond. The evidence demonstrated the successful efforts Mother had made on two occasions in the past to regain custody of N.G. On that point, the evidence demonstrates any improvement Mother has made in her life is tentative and, perhaps, temporary, and she is at risk of relapse. The trial court found, regardless of Mother's compliance with aspects of her case plan, she was still not able to be a successful parent to N.G.

{¶37} In the case of *In re: Summerfield*, 5th Dist. No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶38} Based upon the foregoing, as well as the entire record in this case, the Court properly found N.G. could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable to mitigate the concerns that led to the child's removal.

## B. The Best Interest of the Child

**{¶39}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶40}** The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

**{¶41}** The trial court made findings of fact regarding the children's best interest. It is well-established "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy*

Children, 5th Dist. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), quoting *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

**{¶42}** As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. No. CA-5758, 1981 WL 6321(Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St. 3d 71, 523 N.E.2d 846(1988).

**{¶43}** In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear the record supports the trial court's finding granting the motion for permanent custody is in N.G.'s best interest. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to FCCPS.

**{¶44}** The record makes clear appellant failed to complete the majority of the case plan provided by FCCPS and failed to meet even the basic needs of N.G.

**{¶45}** The trial court found Mother had not "consistently demonstrated that she was clean and sober" and her substance abuse issues meant it was "no longer safe for [N.G.] to be in her care." Mother failed to maintain stable housing and admitted she had not had housing appropriate for the children since January 2012. Mother failed to maintain stable employment and only maintained occasional employment for a few months at a time.

**{¶46}** Concerning her mental health contentions, the trial court found,

After September, 2011, even if Fairfield County Child Protective Services had believed that a psychological evaluation would have benefitted [Mother's], her lack of compliance with other services and her lack of contact with the Agency would have made it unlikely that a limited resource such as a psychological evaluation would have been scheduled for her. The lack of a psychological evaluation does not impact the finding that Fairfield County Child Protective Services developed a reasonable case plan and exerted diligent efforts to assist [Mother] to remedy the problems....

The record indicates that [Mother] was actively engaged in mental health treatment, three (3) times per week, until approximately September, 2011. [Mother] states that the lack of insurance is the reason she has not engaged in mental health services since September, 2011, however there is nothing in the record to indicate that she attempted to obtain mental health services from any other providers. [Mother's] lack of compliance with any aspect of her case plan since September, 2011 is relevant to the Court.

**{¶47}** The record does not demonstrate if Mother had been offered different case plan services, the result would have been different. As the caseworker stated, "because of the lack of consistency on [Mother's] end, it would be difficult to * * * figure out what needs she has."

**{¶48}** Although several relatives have come forward, at the time of trial no other family members had been approved for placement.

### IV. Conclusion

**{¶49}** For these reasons, we find the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore N.G. could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find the trial court's decision permanent custody to FCCPS was in N.G.'s best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶50}** Because the evidence in the record supports the trial court's judgment, we overrule Mother's sole assignments of error, and affirm the decision of the Fairfield County Court of Common Pleas, Juvenile Court Division.

By Hoffman, J.,

Delaney, P.J., and

Farmer, J. concur

s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ Patricia A. Delaney _____
HON. PATRICIA A. DELANEY


s/ Sheila G. Farmer _____
HON. SHEILA G. FARMER

[Cite as *In re N.G.*, 2013-Ohio-192.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN RE: N.G.                              :
                                         :
                                         :
                                         :
                                         :
                                         :
                                         :        JUDGMENT ENTRY
                                         :
                                         :
                                         :
                                         :        CASE NO. 2012-CA-104

For the reasons stated in our accompanying Opinion, we affirm the decision of the Fairfield County Court of Common Pleas, Juvenile Court Division.   Costs to Appellant.

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY


s/ Sheila G. Farmer _____
HON. SHEILA G. FARMER