OPINION
{¶ 1} This case involves two appeals consolidated for purposes of oral argument and this opinion, taken from a judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio. The court's June 2, 2005 judgment entry terminated the parental rights of appellants Bertha and Donald Adkins, Sr. and granted permanent custody of their minor child, appellant Donald Adkins, Jr., to appellee Tuscarawas County Job and Family Services. Donald Adkins, Jr. assigns four errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THIS CHILD HAD BEEN IN THE TEMPORARY CUSTODY OF TUSCARAWAS COUNTY JOB AND FAMILY SERVICES FOR TWELVE OF THE PRIOR TWENTYT-WO MONTHS.
 {¶ 3} "II. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE TUSCARAWAS COUNTY JOB AND FAMILY SERVICES PUT FORTH GOOD FAITH AND DILIGENT EFFORTS TO REHABILITATE THE FAMILY SITUATION.
 {¶ 4} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE APPELLANT CANNOT OR SHOULD NOT BE PLACED WITH HIS PARENTS WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 5} "IV. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF APPELLANT WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 6} Appellants Bertha and Donald Adkins, Sr. assign two errors to the trial court:
 {¶ 7} "I. THE AGENCY FAILED TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT DONALD ADKINS, JR. SHOULD BE PLACED IN THE PERMANENT CUSTODY OF THE TUSCARAWAS COUNTY JOB AND FAMILY SERVICES AGENCY, AS THE AGENCY FAILED TO ESTABLISH (PER R.C.2151.414(B)(1) THAT DONALD ADKINS, JR. CANNOT BE PLACED WITH HIS PARENTS WITHIN A REASONABLE TIME OR THAT IT WAS IN DONALD ADKINS, JR.'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF THE AGENCY.
 {¶ 8} "II. THE TRIAL COURT MANIFESTED JUDICIAL BIAS RESULTING IN PREJUDICE TO APPELLANTS ADKINS WHEN THE TRIAL COURT EXPRESSED CONFIDENCE AND RESPECT FOR THE STATE'S WITNESS BEFORE HEARING ALL THE OTHER TESTIMONY, RESULTING IN A VIOLATION OF APPELLANTS ADKINS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT."
 {¶ 9} The court found certain facts to be true by clear and convincing evidence: The family has long been involved with appellee Job and Family Services, and previously, two older children had been removed from appellant mother's custody. One of these children is in a planned permanent living arrangement and the other is in the permanent custody of JFS.
 {¶ 10} JFS's history with appellant Donald Jr. dates back to 1996. On February 24, 2004, JFS removed Donald Jr. from his parents and placed him in foster care. The court found Donald Jr. has been in the continual custody of JFS for over 12 months.
 {¶ 11} The court found Donald Jr. has progressed well in foster care although he would still prefer to be with his parents. The court found there was a strong family bond and the family did not demonstrate any of the irresponsible, uncaring, or dangerous characteristics often seen in permanent custody cases. To the contrary, the court found the parents clearly love their son very much and would do anything necessary to have him return home.
 {¶ 12} The court found it would not be in the best interest of Donald Jr. to return him to his parents' home. Referring to psychological evaluations of both parents, the court noted both have IQ levels between 62 and 59 and have no real comprehension why Donald Jr. was removed from their custody. The court found they possess very low cognitive skills that hinder their day-to-day functioning and they demonstrate no ability to engage in the type of complex thinking necessary to parent a child. The court found neither parent internalized any of the lessons from their parenting classes in any significant way. The court found the family's supervised visits had gone well, but both parents functioned as peers of their son, instead of his parents. The court further found the record contained no information to indicate the parents' deficits could be improved to any significant degree.
 {¶ 13} The court found Donald Jr. does well in school and his behavior is appropriate. He has no intellectual limitations and performs well in the mainstream classroom. The court concluded it would seriously jeopardize Donald Jr.'s healthy, successful future to expect a normally functioning child like him to be parented by two persons with the severe limitations demonstrated by the appellant parents.
 {¶ 14} The court concluded the minor child cannot and should not be placed with either parent within a reasonable time. The court found despite diligent reasonable efforts and planning by JFS to remedy the problems which caused the removal of the child, both parents have failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal. The court found JFS purposed a case plan which addressed all the concerns which caused the removal of the child. Each element of the case plan had supportive services to assist the parents. The court found the parents have demonstrated a lack of commitment towards their child and have failed to provide an adequate home for the child at this time and cannot do so within a year of the litigation. For this reason, the trial court placed Donald Adkins, Jr. into the permanent custody of JFS pursuant to R.C. 2151.353 (A)(4).
 {¶ 15} The trial court's judgment entry states it had considered all the factors listed in R.C. 2151.414, and concluded it was in the best interest of the child to be placed in the permanent custody of JFS and to terminate the parent rights of his parents.
 {¶ 16} During the pendency of this appeal, the parents moved this court pursuant to App. R. 9 (E) to modify the record on appeal. This will be addressed in the parents' assignment of error II, infra.
 {¶ 17} R.C. 2151.414 was enacted to protect a parent's constitutional rights in permanent custody proceedings by providing procedures a trial court must follow and findings it must make before terminating parental rights. All of the trial court's findings must be supported by clear and convincing evidence, R.C. 2151.414(B). We cannot overturn those findings if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 18} We will address Donald, Jr.'s assignments of error first.
 I {¶ 19} In his first assignment of error, appellant Donald Jr. argues the trial court was incorrect as a matter of law in finding he had been in the temporary custody of JFS for 12 of the prior 22 months. In the case of In Re: C.W., 104 Ohio St. 3d 1632004-Ohio-6411, 818 N.E. 2d 1176, the Ohio Supreme Court held a child must be in the temporary custody of the agency for at least 12 months at the time the motion for permanent custody is filed. Appellant argues the initial complaint was filed on February 23, 2004, and the permanent custody motion was filed on January 21, 2005. Thus, appellant is correct in urging he had not been in JFS's custody for one year when the motion for permanent custody was filed.
 {¶ 20} R.C. 2151.414 sets forth the various grounds for granting permanent custody. They are: (a) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public service agencies or private child-placing agencies for 12 or more months of a consecutive 22 month period, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; and (d) the child has been in the temporary custody of one or public child service agencies or private child placing agencies for 12 or more months of a consecutive 22 month period. Appellant's attention is focused on (d), and he is correct that this is not an appropriate ground for placing him in the permanent custody of JFS.
 {¶ 21} The trial court did not state which of the four grounds upon which it based its decision. However, the court found the child cannot and should not be placed with either parent within a reasonable time. Thus, it appears the court viewed subsection (a) as the appropriate ground. This ground specifically applies when the child has not been in the temporary custody of the agency for the requisite amount of time.
 {¶ 22} Donald Jr.'s first assignment of error is overruled.
 II {¶ 23} In his second assignment of error, Donald Jr. urges the trial court erred in finding JFS put forth good faith and diligent efforts to reunify the family. The parents' assignment of error I includes an argument to this effect, although it is not set forth as a separate assignment of error.
 {¶ 24} R.C. 2151.419 provides the court must determine whether the agency had made reasonable efforts to prevent the removal of the child or to eliminate the continued removal of the child, or make it possible for the child to return home safely. The agency has the burden of proving reasonable efforts.
 {¶ 25} Donald Jr. was originally removed from the home at the mother's request because he had become aggressive towards her and she feared he might hurt himself or someone else. The parents point out the agency did not provide Donald Jr. with anger management classes and did not address his behavior in any way.
 {¶ 26} The reunification plan purposed by the JFS required the parents to complete a psychological evaluation and follow any recommendations for therapy; attend parenting education classes; and be assessed for case management services by MRDD or Community Mental Health.
 {¶ 27} Both parents submitted to a psychological evaluation. The therapy recommended for the father was not available at the time, and would not be implemented for three to six months after the time of the hearing. Mother was to continue on medication under doctor's care, and the record indicates she complied.
 {¶ 28} Both parties attended Community Mental Health Care therapy sessions. The counselor who worked with the parents conceded they had intellectual limitations which required her to present the program in a very elementary manner. Because Donald Jr. was not in the home, the counselor was unable to determine whether the parents could apply the various approaches they had discussed, but the counselor stated she assumed they would have been able to implement them had the child been in the home. The therapist opined the child would be safe with the parents. She also testified she was surprised to some degree that Dr. Misra's physiological evaluation reached very different conclusions.
 {¶ 29} The record indicates there was some confusion as to whether the parents completed a course in parenting education, but the Family Services aide testified she did not place the parents in her group class. Instead, the Family Services aide met with the parents on an individual basis before and after the supervised visits, and she hoped the parents would also learn parenting skills from the foster mother during these visits. The aide terminated the individual education because she felt they were making no progress.
 {¶ 30} The third and final objective on the case plan was to be assessed for case management services. The parents were both assessed, but did not qualify for any services.
 {¶ 31} Dr. Misra is the psychologist who evaluated the parents. In contrast to the counselor's testimony, Dr. Misra testified ongoing therapy might benefit the parents, only to the extent it would help them recognize their cognitive limitations, but it would not improve their skills. Dr. Misra testified he was concerned about the mother's ability to properly care for the child with regard to safety issues. The presence of the father in the home did not make the situation better, because this simply compounded the parenting limitations, and the parties might not agree how to deal with a situation.
 {¶ 32} We find the record supports the trial court's determination JFS addressed the concerns which resulted in the removal of the child, and offered supportive services for each element. Although the court contradicted itself in concluding the parents demonstrated a lack of commitment towards the child, the record supports the court's finding notwithstanding JFS' diligent efforts, the parents were unable to resolve the issues and provide an adequate home for their child.
 {¶ 33} Donald Jr.'s second assignment of error is overruled.
 III {¶ 34} Appellant Donald Jr.'s third assignment of error urges the court's determination he could not or should not be placed with his parents within a reasonable time was against the manifest weight and sufficiency of the evidence. This issue is also part of the parents' assignment of error I.
 {¶ 35} The trial court's judgment entry states the court had considered all the factors listed in R.C. 2151.414. The judgment entry contains the language of at least two of the statutory factors, and discusses an issue contained in a third.
 {¶ 36} First, the court found despite diligent reasonable efforts and planning by JFS to remedy the problems which caused the removal of the child, both parents had failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal. The record indicates Donald Jr. was removed from his home because he became aggressive towards his mother, and she feared he might hurt himself or someone else. This is indicative of discipline problems. Although testimony differed, there is sufficient competent and credible evidence the parents cannot fully parent their son, and will not be able to do so in the future, one factor listed in the statute.
 {¶ 37} Another factor in R.C. 2151.414 is the parent has demonstrated a lack of commitment towards a child by failing to regularly support, visit, or communicate with the child when able to do so or by other actions showing an unwillingness to provide an adequate permanent home for the child. The trial court found the parents have demonstrated a lack of commitment to the child in not providing an adequate permanent home for him. The record does not support this particular factor, and the trial court's findings of fact contradict it.
 {¶ 38} Finally, statutory factor number eleven is the parent has had his or her parental rights in another child involuntarily terminated. The trial court made a finding regarding mother's other children, but does not cite it as a reason Donald Jr. cannot be placed with his parents within a reasonable time or should not be placed with his parents.
 {¶ 39} The statute directs any one of the listed factors can be a ground for concluding the child cannot or should not be placed with his parents within a reasonable time. We find one of the statutory factors is present, and gives the court grounds for finding Donald Jr. should not be returned to his parents.
 {¶ 40} Donald Jr.'s third assignment of error is overruled.
 IV {¶ 41} In his fourth assignment of error, Donald Jr. urges the trial court's determination that his best interest would be served by granting permanent custody to JFS was against the manifest weight and sufficiency of the evidence. This is also the final part of the parents' assignment of error I.
 {¶ 42} R.C. 2151.414 (D) lists four factors the court should consider, and cites to certain factors in R.C. 2151.414 (E) referring to whether the child cannot or should not be placed with his parents within a reasonable time.
 {¶ 43} The trial court found to return Donald Jr. to his parents would seriously jeopardize his healthy, successful future. We find the record supports the trial court's conclusion it was in the best interest of Donald Jr. for JFS to take permanent custody of him.
 {¶ 44} Donald Jr.'s fourth assignment of error is overruled.
 I {¶ 45} The parents' first assignment of error contains arguments paralleling Donald Jr.'s last three assignments of error. In light of our discussion supra, the parents' assignment of error I is overruled.
 II. {¶ 46} In their second assignment of error, appellants argue the trial court manifested judicial bias in endorsing the State's witness before all the evidence had been presented.
 {¶ 47} The parties have stipulated on May 27, 2005, Dr. Rajendra Misra testified on behalf of JFS. All parties had the opportunity to cross examine Dr. Misra.
 {¶ 48} After Dr. Misra testified, the court went off the record before the next witness, Dr. Bharat Osza, testified. Counsel were present but the parties were not.
 {¶ 49} The parties stipulated there was a conversation between the court and Dr. Misra in which the court indicated it agreed with his professional opinion and found it refreshing to hear someone testify that many of the treatments and therapeutic behavior counseling are not scientifically supported. The parties stipulated the court informed Dr. Misra it had enjoyed his testimony and he is welcome in its court at any time. The court indicated it agreed with Dr. Misra's view point.
 {¶ 50} The stipulations were presented to the trial court for approval. The court agreed it had gone off the record after Dr. Misra's testimony, but found it had thanked Dr. Misra for his attendance and constant willingness to be available to the court, and for his professional demeanor. The court found it had complimented him as a very informative witness. The court also found Dr. Misra had referred to a variety of popular but ineffective therapies that come and go in his profession, and the court recalled informing him it appreciated his common sense approach. The court stated the discussion was general, and denied it ever commented on any issues, any parties, or any opinion voiced by Dr. Misra in this matter.
 {¶ 51} App. R. 9 (E) provides if any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the court and the record made to conform to the truth. If anything material to either parties was omitted from the record by error or accident, or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion, or of its own initiative, may direct the omission or misstatement be corrected. If necessary, a supplemental record can be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.
 {¶ 52} Here, we have both a stipulation of the parties and a statement of the court, and they do not agree.
 {¶ 53} Appellants cite State ex rel. Pratt v. Weygandt
(1956), 164 Ohio St. 463. Therein, the Supreme Court found bias or prejudice occurs when a judge before whom a case is pending implies a hostile feeling or spirit of ill will, or undue friendship or favoritism towards one of the litigants or his attorney. It indicates the judge has reached a fixed anticipatory judgment rather than keeping an open mind regarding the law and the facts. Even if we construe the stipulations most favorably towards the appellants, we find the situation does not rise to the level of prejudice or bias. The stipulations do not contradict the court's statement the discussion was couched in general terms, and were not related to any of Dr. Misra's specific opinions in this case.
 {¶ 54} The parents' second assignment of error is overruled.
 {¶ 55} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed.
Gwin, J., Wise, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed. Costs to appellant parents.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed. Costs to appellant parents.