[Cite as *In re C. Children*, 2015-Ohio-4658.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                      |   | JUDGES:                      |
|----------------------|---|------------------------------|
| IN THE MATTER OF:    | : | Hon. W. Scott Gwin, P.J.     |
|                      | : | Hon. William B. Hoffman, J.  |
| C. CHILDREN          | : | Hon. John W. Wise, J.        |
|                      | : |                              |
|                      | : |                              |
|                      | : | Case No. 2015CA00138         |
|                      | : |                              |
|                      | : |                              |
|                      | : | O P I N I O N                |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of Common Pleas, Juvenile Division, Case Nos. 2015JCV00569 & 2015JCV 00569(A)

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     November 9, 2015

APPEARANCES:

For Plaintiff-Appellant             For Defendant-Appellee

CHRISTINA EOFF             MARY G. WARLOP
STARK COUNTY JFS             116 Cleveland Ave N.W.
300 Market Avenue North             Suite 500
Canton, OH 44702             Canton, OH  44702

*Gwin, P.J.*

{¶1} Appellant-mother Danielle S. ["Mother"][1] appeals the July 20, 2015 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights with respect to her minor children, L.C. (b. Nov. 2, 2012) and R.C. (B. Oct. 17, 2013) and granted permanent custody of the children to appellee, Stark County Department of Jobs and Family Services (hereinafter "SCJFS").[2]

*Facts and Procedural History*

{¶2} On June 11, 2014, SCJFS filed a complaint alleging the neglect and/or dependency of the children.

{¶3} On July 9, 2014, the children were found to be dependent by adjudication. On the same date, July 9, 2014, a disposition hearing was held and temporary custody was granted to the SCJFS.

{¶4} On December 3, 2014, the trial court reviewed the case. The trial court approved and adopted the case plan review packet, found that compelling reasons existed to preclude filing for permanent custody, found that SCJFS had made reasonable efforts to prevent the children's continued removal from the home, and maintained status quo.

{¶5} On May 7, 2015, the trial court again reviewed the case. The trial court approved and adopted the case plan review packet, found that SCJFS had made reasonable efforts in finalizing the permanency plan in effect, no compelling reasons existed to preclude a request for permanent custody, and maintained status quo.

---

[1] Father has filed a separate appeal. *See*, *In the matter of C Children,* 5th Dist. Stark No. 2015CA00146.

[2] Counsel should adhere to Sup.R.Rule 44(H) and 45(D) concerning disclosure of personal identifiers. See also Juv. R. 5.

{¶6}   On May 12, 2015, the SCDJFS filed the pending motion for permanent custody.

{¶7}   On July 7, 2015, the trial court heard evidence on SCJFS's motion seeking permanent custody of the children.

*Permanent Custody trial.*

{¶8}   At the permanent custody trial, the caseworker, Ms. Mitchell, testified that she had been working with the family since June, 2014. Prior to that, another agency worker was involved with the family beginning in May, 2014. A complaint was filed alleging dependency on June 11, 2014. The underlying concerns included allegations of domestic violence and substance abuse. SCDJFS prepared a case plan for the family.

{¶9}   Mother's case plan services included a parenting evaluation at Northeast Ohio Behavioral Health (NEOBH) and a substance abuse assessment at Quest. Mother completed her parenting evaluation at NEOBH. The NEOBH evaluation recommendations included Goodwill Parenting Classes, individual counseling, twelve step meetings, intensive outpatient treatment (if she continued to test positive), nine months of sobriety, stable housing and employment. Mother also completed her substance abuse assessment at Quest on June 30, 2014.

{¶10}   Mother initially engaged in treatment at Quest. At some point, Mother was terminated from the Quest program. Mother returned to Quest and received another substance abuse assessment on January 27, 2015. The assessment recommended intensive outpatient therapy. Mother did engage in a pre-group session.

{¶11}   Mother was recommended to Goodwill parenting which she did not complete because of her continued drug use (Goodwill Parenting requires at least thirty

days of sobriety to attend the classes). Mother was not able to maintain such a period of sobriety. Mother attempted to complete intensive outpatient treatment as recommended by Quest Recovery Services twice, but she failed to complete the treatment either time. Mother refused all random drug tests when asked with the exception of two, which she failed. Her last refusal was July 1, 2015. Mother is currently unemployed and has not proven that she is able to maintain steady employment. She is currently residing with a family member after being evicted from subsidized housing for not paying rent. Mother was arrested in May on an active warrant for theft and was released from jail on June 30, 2015.

{¶12}   The caseworker did not have any contact with Mother from May 22, 2015 until July 1, 2015. The caseworker indicated that Mother was incarcerated during that time.  The caseworker testified that Mother also reported that she submitted a drug test on July 6, 2015 but the caseworker had not receive the results. Mother reported to the caseworker that she had an appointment for an assessment at Quest.  The caseworker testified that it was possible that Mother had attended and completed a Quest assessment on July 6, 2015.

{¶13} Mother visited her children regularly throughout the case plan. The only time that Mother missed visits with her children was when she was incarcerated. The caseworker stated that there were no concerns with Mother's visits.

{¶14} The caseworker testified that the agency had looked into placing the children with their maternal grandmother.  A home study was conducted on the maternal grandmother. Her home was deemed appropriate. The children were placed with maternal grandmother for five days. Grandmother called the agency and told them that

she was unable to care for the children and that their presence in her home was "Too much for her." Maternal grandmother has health problems that make it impractical for her to care for two children.

{¶15} Dr. Aimee Thomas from Northeast Ohio Behavioral health also testified that she had completed a parenting evaluation of Mother and generated a report dated October 20, 2014. She testified that her biggest concern with Mother was substance abuse issues. Dr. Thomas testified that Mother is within the average range of intelligence. This would indicate that she is certainly capable of learning and certainly capable of integrating appropriate parenting practices or substance abuse suggestions into her life.

{¶16} Dr. Thomas diagnoses Mother with alcohol abuse disorder, cannabis abuse disorder, cocaine abuse disorder and opiate abuse disorder. (T. at 43). On cross-examination, Dr. Thomas conceded that her diagnosis was based upon self-reporting by mother.

{¶17} Mother also testified during the trial. Mother acknowledged that she had a drug addiction, which fueled her stealing and led to theft charges and warrants. However, Mother had been released from jail on June 30, 2015. Since that time, she had undergone an assessment at Quest and started counseling with Quest. Mother had her first counseling scheduled that same day as trial. Mother had also set up an appointment at "Tasc." Mother had also reinitiated contact with "Saffy." Mother also reported that she had gotten clean while in jail and had attended AA meetings in jail and met with "Tasc" three of four times while in jail.

{¶18} The Guardian ad litem presented a written report to the Court and

recommended permanent custody be granted to SCDJFS.

{¶19} Maternal grandmother, Dawn S. testified that she had placement of the children for approximately one week. She acknowledged that she called the agency and told them to place the children in foster care. She explained that she thought that Mother would be able to get the children back. Maternal grandmother testified that she had the room and the ability to take placement of the children. She stated that she did not have any medical conditions that would prevent her from caring for the children, other than arthritis. She further testified that she had been diagnosed and treated for pneumonia, which she mistakenly believed, was a heart attack. Maternal grandmother testified she does not have any heart conditions. Maternal grandmother signed a statement of intent regarding receiving change of legal custody of the children. Maternal grandmother has been sober for eleven years, although she is still on methadone as part of her treatment program. (T. at 111).

{¶20} Mother testified and requested that the Court consider giving her additional time to work on her case plan. Mother testified that in the alternative she would like the Court to consider granting legal custody of the children to maternal grandmother.

{¶21} On July 20, 2015, the trial court issued a written judgment entry with findings of fact and conclusions of law determining that grounds existed to grant permanent custody of the children to SCDJFS. The trial court found that neither parent had remedied the problems that led to removal, nor will they remedy the problems leading to removal within a reasonable period of time.

{¶22} Regarding best interests, the trial court also found that it is in the best interests of the children to grant permanent custody to the SCDJFS for purposes of

adoption and that extending temporary custody to allow the parents to complete their case plan is not in the children's best interests. The trial court found that the parents will not be able to remedy the initial problems in this case any time within the foreseeable future.

*Assignments of Error*

{¶23} Mother raises two assignments of error,

{¶24} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶25} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**Burden of Proof.**

{¶26} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a

parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

**{¶27}** An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**Standard of Review.**

**{¶28}** The Ohio Supreme Court has delineated our standard of review as follows,

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by

which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

**{¶29}** In *Cross,* the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland,* 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**<u>Requirements for Permanent Custody Awards.</u>**

**{¶30}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶31} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more

months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶32}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

### 1. Parental Placement within a Reasonable Time–R.C. 2151.414(B)(1)(a).

**{¶33}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151 .414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)—(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E .2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

**{¶34}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable

period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available

to the parents for changing parental conduct to allow them to resume and maintain parental duties.

\* \* \*

(16) Any other factor the court considers relevant.

**{¶35}** R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

**{¶36}** In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(E)(1), (4) and /or (16).

**{¶37}** As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

**{¶38}** Mother was incarcerated for much of the time during which the case plan was in effect. She was unable to start or finish programs because of her drug use and also because she had active warrants for her arrest. Mother failed to complete the Goodwill Parenting Program. Mother was terminated from Quest treatment for non-compliance. Mother failed to comply with random drug testing, and when she did comply she tested positive for drugs. Mother attempted to complete intensive outpatient

treatment as recommended by Quest Recovery Services twice, but she failed to complete the treatment either time.

**{¶39}** The evidence demonstrated the successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of his case plan, she was still not able to be a successful parent to these two children.

**{¶40}** In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶41}** Based upon the foregoing, as well as the entire record in this case, the Court properly found the children could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable to mitigate the concerns that led to the children's removal.

### **The Best Interest of the Child.**

**{¶42}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with

due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶43} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

{¶44} The trial court made findings of fact regarding the children's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

{¶45} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA-5758, 1981 WL 6321(Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has

had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St. 3d 71, 523 N.E.2d 846(1988).

{¶46} In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest. The trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to SCJFS

{¶47} The record makes clear that Mother failed to complete the majority of the case plan provided by SCJFS and failed to meet even the basic needs of the children.

{¶48} Mother failed to maintain stable housing. Mother failed to maintain stable employment. Mother failed to maintain her sobriety, and further, was incarcerated for much of the time. The record does not demonstrate that if she had been offered different case plan services, or additional time to complete services the result would have been different.

### *Relative Placement.*

{¶49} The children were placed with maternal grandmother for five days. Grandmother called the agency and told them that she was unable to care for the children and that their presence in her home was "Too much for her." The caseworker testified,

> [W]hat I have observed of [maternal grandmother], she has been unable to meet the needs of those children regardless of whether it's medical, whether it's obesity, I don't know why, I'm, I'm not a medical

doctor but I can say is [sic.] I have observed many visits with her and she's been unable to even meet their basic needs, during visitation...for a two hour period.

T. at 88.

{¶50} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911. Generally, a civil judgment which is supported by competent and credible evidence may not be reversed as being against the manifest weight of the evidence. *See State v. McGill,* 5th Dist. Fairfield No.2004–CA–72, 2005–Ohio–2278, 2005 WL 1092394, ¶ 18. A reviewing court must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his or her way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Hunter v. Green,* 5th Dist. Coshocton No. 12–CA–2, 2012–Ohio–5801, 2012 WL 6094172, ¶ 25, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179. It is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. Summit No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St .2d 230, 227 N.E.2d 212.

{¶51} Furthermore, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re*

*Mauzy Children*, 5th Dist. Stark No.2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

## Conclusion.

{¶52} For these reasons, we find that the trial court's determination that Mother had had failed to remedy the issues that caused the initial removal and therefore the children could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCJFS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶53} Because the evidence in the record supports the trial court's judgment, we overrule Mother's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur