[Cite as *In re J.G.*, 2021-Ohio-1479.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: J.G. | : | JUDGES: |
|  | : | Hon. Craig R. Baldwin, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2021 CA 00002 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:    Civil appeal from the Stark County Court of
Common Pleas, Family Court Division,
Case No.2019JCV01271

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    April 28, 2021

APPEARANCES:

For - SCJFS

JAMES B. PHILLIPS
300 Market Avenue North
Canton, OH 44702

For - Mother

KELLY S. MURRAY
800 Courtyard Center
116 Cleveland Avenue NW
Canton, OH  44702

*Gwin, J.*

{¶1} Appellant-mother ["Mother"] appeals the December 16, 2020 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights with respect to her minor child, J.G.[1] (b. Apr. 15, 2019) and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services (hereinafter "SCJFS").

*Facts and Procedural History*

{¶2} On December 17, 2019, SCJFS filed a complaint alleging dependency and or neglect of J.G. Mother, M.G., is the biological mother of the child. On December 18, 2019, the trial court found probable cause existed for SCJFS to be involved and placed the child into emergency temporary custody with SCJFS. On December 30, 2019, a Guardian Ad Litem ["GAL"] was appointed for the child. On January 15, 2020, an evidentiary hearing was set for February 28, 2020 to determine adjudication and disposition. On February 21, 2020, the GAL filed a report and recommended this child be placed in the temporary custody of SCJFS. On March 3, 2020, Mother stipulated to a finding of dependency at the adjudicatory hearing. A disposition hearing was held that same day and the court placed the child in the temporary custody of SCJFS. The court approved and adopted the case plan filed on January 23, 2020.

{¶3} On June 6, 2020, a dispositional review was held where the trial court was unable to find compelling reasons to preclude a request for permanent custody to SCJFS due to the lack of reduction of the risk. On October 20, 2020, SCJFS filed a motion for permanent custody. On November 13, 2020, a dispositional review was held and again

---

[1] See, Juv. R. 5; OH ST Supp. R. 44(H) and 45(D) concerning the use of personal identifiers.

the court found no compelling reasons to preclude a request for permanent custody. At that time, the finding was made due to the pending permanent custody hearing on December 8, 2020.

{¶4} On December 8, 2020, the permanent custody hearing was held pursuant to RC. 2151.414.

### *Permanent Custody trial.*

{¶5} Mother did not appear at the permanent custody hearing; however, she was represented by appointed counsel.

{¶6} The ongoing caseworker, Carmona Griffin, testified that J.G. was originally placed in the emergency temporary custody of the SCJFS on December 16, 2019 and had remained in the custody of the SCJFS since that date. The child was found dependent as to all parents on February 28, 2019 and at on the date of the permanent custody trial the child had been in the temporary custody of the SCJFS for just short of a year.

{¶7} Ms. Griffin testified that Mother had services on her case plan that required her to complete a substance abuse assessment at CommQuest, complete an anger management assessment at CommQuest, submit to random drug testing on the color code system, and successfully complete the Goodwill Parenting Program. Mother only completed the substance abuse assessment at CommQuest. Mother failed to follow through with the recommended treatment. Ms. Griffin testified that Mother had left the state and was presently residing in the state of Alabama. Ms. Griffin testified that Mother last visited J.G. on February 6, 2020.

{¶8} During the Best Interest part of the hearing, Ms. Griffin testified that the child had no medical issues or delays. J.G. had been placed in his current foster home

in December 2019. Ms. Griffin testified that the child has a significant bond with the foster parent as she is the only mother J.G. has known. Ms. Griffin testified that there is no bond between the child and Mother. Ms. Griffin testified that she believed that it was in J.G.'s best interest for permanent custody to be granted.

{¶9} The GAL for the child, submitted a report that recommended that permanent custody be granted to the SCJFS.

{¶10} On December 16, 2020, the trial court issued its findings of fact and conclusions of law granting permanent custody of J.G. to SCJFS and terminating Mother's parental rights. The trial court found that J.G. could not and should not be placed with Mother at this time or within a reasonable period of time, the child had been abandoned by Mother, and permanent custody was in J.G.'s best interest.

*Assignment of Error*

{¶11} Mother raises one Assignment of Error,

{¶12} "I. THE TRIAL COURT ERRED IN FINDING THAT THE CHILD COULD NOT BE PLACED WITH MOTHER WITHIN THE FORESEEABLE FUTURE."

*Law and analysis*

**Standard of Appellate Review**

{¶13} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's

rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id. An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

{¶14} The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986). In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the*

*truth and what should be rejected as false.* See *Rice v. City of Cleveland*,

114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

**Requirements for Permanent Custody Awards**

{¶15} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶16} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the

temporary custody of one or more public children services agencies or

private child placing agencies for twelve or more months of a consecutive

twenty-two-month period, or has not been in the temporary custody of one

or more public children services agencies or private child placing agencies

for twelve or more months of a consecutive twenty-two-month period if, as

described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶17} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

### 1. Abandonment – R.C. 2151.414(B)(1)(b).

{¶18}  In the case at bar, the trial court found, by clear and convincing evidence, that Mother abandoned the child pursuant to R.C. 2151.414(B)(1)(b). Pursuant to R.C. 2151.011(C), a child is "presumed abandoned when the parties of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶19}  The trial court found that Mother had abandoned J.G. by virtue of her lack of contact, lack of bonding, failure to support, and failure to attempt any form of reunification.

{¶20}  Competent, credible evidence supports the trial court's findings. In the case at bar, Mother's last visit with J.G. was February 6, 2020.  The motion for permanent custody was filed October 26, 2020. Thus, one hundred eighty-three days had elapsed without contact between Mother and J.G. before the filing of the motion for permanent custody. Mother has left Ohio and is now residing in Alabama. Mother has not disputed these facts.

{¶21}  A trial court's finding of abandonment under R.C. 2151.414(B)(1)(b) will satisfy the first prong of the permanent custody test, independent of a finding under R.C. 2151.414(B)(1)(a) [Parental Placement within a Reasonable Time], allowing the court to move on to the second prong of considering whether the grant of permanent custody to the agency is in the best interest of the child. *In re A.M.,* 5th Dist. Stark No. 2013 CA 00113, 2013-Ohio-4152.

**2. The Best Interest of the Child.**

{¶22} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶23} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

{¶24} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. *In re Patterson,* 134 Ohio App.3d 119, 730 N.E.2d 439 (9th Dist. 1999); In *re Adoption of*

*Ridenour,* 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991). Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re R.P. and I.S.,* 5th Dist. Tuscarawas No. 2011AP050024, 2011-Ohio-5378.

{¶25} In the present case, the trial court's decision indicates it considered the best interest factors. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to SCJFS. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in J.G.'s best interest.

{¶26} J.G. had been placed in his current foster home since December 2019, which is basically his entire life. Ms. Griffin testified that the child has a significant bond with the foster parent as she is the only mother he has known. Ms. Griffin testified that there is no bond between the child and Mother. The foster parent has indicted that she wished to adopt the child if permanent custody was granted. Ms. Griffin testified that she believed that it was in J.G. best interest for permanent custody to be granted. The GAL presented a written report to the trial court that recommended permanent custody be granted to the SCDJFS.

**Conclusion**

{¶27} For these reasons, we find that the trial court's determination that Appellant-Mother had abandoned J.G. was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCJFS was in the child's best interest was

based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶28} Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's sole assignment of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

By: Gwin, J.,

Baldwin, P.J., and

Hoffman, J., concur