[Cite as *In re Q.G.*, 2016-Ohio-1180.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                | | |
|----------------|---|---|
| IN RE: Q.G.    | : | JUDGES: |
|                | : | Hon. Sheila G. Farmer, P.J. |
|                | : | Hon. W. Scott Gwin, J. |
|                | : | Hon. William B. Hoffman, J. |
|                | : | |
|                | : | |
|                | : | Case No. 2015CA00219 |
|                | : | |
|                | : | |
|                | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of Common Pleas, FamilyCourt Division, Case No. 2015JCV00076

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 21, 2016


APPEARANCES:


For SCDJFS

CHRISTINA EOFF
300 Market Avenue N.
Canton, OH 44702

For Appellant

AARON KOVALCHIK
116 Cleveland Avenue N.W.
Suite 808
Canton, OH 44702

*Gwin, J.*

{¶1} Appellant-father Michael Hogan ["Father"] appeals the November 17, 2015 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights with respect to his minor child, Q.G. (b. Jan. 15, 2015) and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services (hereinafter "SCJFS").

*Facts and Procedural History*

{¶2} On January 27, 2015, the SCJFS filed a Complaint alleging abuse, neglect and dependency of Q.R. and seeking temporary custody of the child. At an emergency shelter care hearing on January 27, 2015, Mother and Father appeared. After consultation with their attorneys, both parents stipulated to a finding of probable cause. The Court found probable cause and awarded temporary custody to the SCJFS.

{¶3} On April 3, 2015, the trial court found Q.G. to be abused and placed her into the temporary custody of SCJFS. The trial court approved and adopted the case plan and found that SCJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home.

{¶4} On July 9, 2015, the trial court reviewed the case. The trial court approved and adopted the case plan review packet, found that compelling reasons existed to preclude filing for permanent custody, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and maintained status quo.

{¶5} On September 3, 2015, SCJFS filed a motion seeking permanent custody of the child. SCJFS alleged, among other things, that the child could not be placed with the parent within a reasonable amount of time, the parent had demonstrated a lack of

commitment toward the child by failing regularly to support, visit, or communicate with the child when able to do so, the parent had parental rights terminated pursuant to R.C. 2151.353, 2151.414, or 2151.415 with respect to a sibling of the child, and permanent custody was in the child's best interest.

*Permanent Custody Trial.*

{¶6} On November 10, 2015, the trial court heard evidence on SCJFS's motion seeking permanent custody of Q.G.

{¶7} Prior to the start of the hearing, counsel for Father made an oral motion to continue the hearing on the ground that he had no contact with Father and needed additional time to prepare for the permanent custody hearing. The trial court denied the motion to continue, as well as counsel's subsequent motion to withdraw as Father's attorney.

{¶8} Caseworker Sue Snyder testified the agency became involve at Q.G.'s birth due to a positive cocaine test of both Mother and child. She further testified that Father had involuntarily lost permanent custody of a different child in the past.

{¶9} Ms. Snyder testified the case plan services for both Mother and Father included Parenting Evaluation at Northeast Ohio Behavioral Health (NEM), drug/alcohol assessments at Quest and case management services to include stable housing, stable employment and mental health treatment. Father was to participate in anger management and sex offender treatment with Melymbrosia. However, Father had not engaged in almost any case plan service. Father had failed to provide any support or have any communication with Q.G. for multiple months. Ms. Snyder further testified that Father was incarcerated and not due to be released until July of 2016.

{¶10} The agency did conduct a home study of the paternal grandmother. However, she was denied placement due to her past history.

{¶11} Father testified that his warrant held him back from completing case plan services. Father further testified that he wanted to have a relative gain custody of his child instead of permanent custody and that he wanted the court to grant an extension. Father testified that he would be able to engage in services during the time that he is incarcerated.

{¶12} Upon conclusion of Father's testimony, the Permanent Custody hearing proceeded to the best interest portion of the trial.

{¶13} Sue Snyder was recalled by SCJFS. Snyder testified that Q.G. has been placed in a foster home with a half sibling since her birth and she is meeting all of her milestones. Ms. Snyder testified that Father never gave her any names of relatives when she met with him at the jail prior to the permanent custody hearing. However, upon cross-examination she admitted that she did not ask him for names of relatives. Ms. Snyder testified that Father's interactions with Q.G. were normal.

{¶14} Father took the stand during the best interest phase and testified that no one ever approached him in regards to relative placement. Father once again testified that he would like another opportunity to gain custody of his child. Additionally, Father testified that he did not believe his grandmother was given a chance to obtain custody of his daughter. Father's trial counsel then made an oral motion for an extension of temporary custody.

{¶15} On November 17, 2015, the trial court issued its findings of fact granting permanent custody of Q.G. to SCJFS and terminating Father's parental rights. The trial

court found that Q.G. could not and should not be placed with Father at this time or within a reasonable period of time, Father had demonstrated a lack of commitment toward his child by failing to regularly support, visit, or communicate with her when able to do so, Father had his parental rights involuntarily terminated as to a sibling of Q.G., and permanent custody was in Q.G.'s best interest.

*Assignments of Error*

{¶16} Father raises four assignments of error,

{¶17} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT GRANT APPELLANT'S MOTION FOR A CONTINUANCE.

{¶18} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶19} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶20} "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT GRANT APPELLANT'S MOTION FOR AN EXTENSION OF TEMPORARY CUSTODY."

***Burden of Proof***

{¶21} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody

and management of his or her child is "fundamental."  Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982).  The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case."  *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(sixth Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows."  Id.

{¶22}  An award of permanent custody must be based upon clear and convincing evidence.   R.C.  2151.414(B)(1).   The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal."  *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

### *Standard of Review*

{¶23}  The Ohio Supreme Court has delineated our standard of review as follows,

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.  See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

**{¶24}** In *Cross*, the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**Requirements for Permanent Custody Awards**

**{¶25}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a

child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶26} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) The child is abandoned;

(c) The child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has

been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶27}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Father's First Assignment of Error: Failure to Grant a Continuance.**

**{¶28}** In *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the Court considered the matter under a due process analysis. It said:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence.... Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied...."

Id. at 589, 84 S.Ct. at 849.

{¶29} Ordinarily a reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921(1964).

{¶30} In denying Father's request for a continuance the trial court found,

Father's counsel requested a continuance due to his inability to contact his client previously which he indicated had hampered his ability to thoroughly prepare for trial. While Father was incarcerated at the time of the trial, he was not incarcerated between the adjudication in April 2015 until September 9, 2015, however, he did not maintain contact with his attorney during that period. He told the Guardian that he was laying low because he knew he had a warrant outstanding. The agency worker went to the jail and met with Father on October 14, 2015. She discussed the case plan and the status of the case with Father. Even this did not cause Father to contact his counsel. The Court delayed the start of the trial to allow Attorney Coleridge time to consult with his client, but the request for a continuance was denied [.]

*Findings of Fact and Conclusions of Law,* filed Nov. 17, 2015 at 3.

{¶31} Under the circumstances of this case, we find the trial court did not abuse its discretion in denying Father's motion for a continuance.

### Father's Second Assignment of Error: Parental Placement within a Reasonable Time- R.C. 2151.414(B) (1) (a).

{¶32} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with

the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.,* 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow*, 4th Dist. No. 98 CA 6, 1998 WL 655414(Sept. 21, 1998); *In re: Butcher*, 4th Dist. No. 1470, 1991 WL 62145(Apr 10, 1991).

{¶33} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with

either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or

allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.052907.07, 2907.08, 2907.09, 2907.12, 2907.21,2907.22, 2907.23, 2907.252907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

(7) The parent has been convicted of or pleaded guilty to one of the following:

* * *

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can

provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

{¶34} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(E)(1), (4) and /or (11).

{¶35} As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for

the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶36} Father was incarcerated for much of the time during which the case plan was in effect. He failed or refused to start or finish programs because of outstanding warrants for his arrest. Father failed to complete a parenting evaluation, a drug and alcohol assessment, and have stable employment and stable housing. Father further failed to participate in anger management and sex offender treatment. Father's last visit with the child was June 2015. Father missed two scheduled visits. Father has not provided support to his child. Finally, Father had lost custody of another child.

{¶37} The evidence did not demonstrate that Father successfully completed any aspect of his case plan. On that point, the evidence demonstrates that any improvement that Father has made in his life is tentative and, perhaps, temporary, and that he is at risk of relapse. The trial court found that Father was not able to be a successful parent to this child.

{¶38} In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶39} Based upon the foregoing, as well as the entire record in this case, the Court properly found the child could not or should not be returned to Father within a reasonable time. Despite offering numerous services, Father was unable to mitigate the concerns that led to the child's removal.

**Father's Third Assignment of Error: The Best Interest of the Child.**

{¶40} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶41} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist. 1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

{¶42} The trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy*

*Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting*

*In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

**{¶43}** As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1981 WL 6321 (Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).

**{¶44}** In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in Q.G.'s best interest. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to SCJFS. In the case at bar, in addition to the testimony, the trial court considered the report of the GAL.

**{¶45}** The record makes clear that Father failed to complete the majority of the case plan provided by SCJFS and failed to meet even the basic needs of the child. As set forth in our *Facts and Procedural History, supra*, Father failed to remedy the problems that initially caused the removal of the child from the home. Father was not consistent with his case plan. Very little if anything, has changed with respect to Father since this case began. He does not understand the problems with his behavior, or his lifestyle. Father displays poor judgment and poor coping skills. Father has been unable to

demonstrate any meaningful change in his behavior in spite of losing custody of another child.

**{¶46}** During the best interest portion of the trial, Ms. Snyder testified that Q.G. was very well taken care of in her foster placement. The child and her foster family were very bonded. The foster home was the only home that the child knew, given her removal from Father and her mother when she was only one day old. Ms. Snyder testified that the foster family was open to allowing both parents to maintain contact with Q.G. The foster parents took care of Q.G.'s mother when she was a minor child, and also adopted Q.G.'s sibling, who was also living in the same home. Q.G. and her sibling have a very close relationship. The foster family wants to adopt Q.G. Ms. Snyder also testified that permanent custody was in Q.G.'s best interest and that the child would suffer no ill effects if Father's parental rights were terminated.

**{¶47}** Jaclyn Palumbo, Guardian ad Litem for the child, also testified during the best interest portion of the trial. Ms. Palumbo opined that permanent custody was in Q.G.'s best interest because she was "in a good, safe place." Ms. Palumbo also testified that "(she) (was) guardian to many other children and (she) wish(ed) they all had as good of (sic) home to be placed in and potentially be adopted by."

**Father's Fourth Assignment of Error: Failure to Grant Extension of**

**Temporary Custody**

**{¶48}** Pursuant to Ohio Revised Code Section 2151.415(D), the court *may* extend the temporary custody order of the child for a period of up to six months, if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one

of the parents or otherwise permanently placed within the period of extension.

**{¶49}** The record makes clear that Father failed to complete any of the case plan provided by SCJFS and failed to meet even the needs of the child. Father failed to maintain stable housing. Father failed to maintain stable employment. Father failed to maintain his sobriety, and further, was incarcerated for much of the time. The record does not demonstrate that if he had been offered different case plan services, or additional time to complete services the result would have been different. Father has failed to demonstrate an abuse of discretion by the trial court. *In re: T.G.,* 12th Dist. Warren Nos. CA2014-07-101, CA2014-08-106, 2014-Ohio-5569, ¶28.

## Conclusion

**{¶50}** For these reasons, we find that the trial court's determination that Father had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with him within a reasonable time or should not be placed with him was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶51}** Because the evidence in the record supports the trial court's judgment, we overrule Father's four assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

**{¶52}** Father's first, second, third and fourth assignments of error are overruled.

{¶53} The judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.


By Gwin, J.,

Farmer, P.J., and

Hoffman, J., concur