[Cite as *In re K.S.*, 2017-Ohio-5778.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

    K.S.

JUDGES:
Hon. Patricia A. Delaney, P. J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 17 CA 12

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 14 AB 88 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 10, 2017 |

APPEARANCES:

| For Appellant Mother | For Appellee |
|---|---|
| WILLIAM J. HOLT<br>2140 Lancaster-Newark Road<br>P. O. Box 2252<br>Lancaster, Ohio 43130 | DAVID SILWANI<br>ASSISTANT PROSECUTOR<br>239 West Main Street, Suite 101<br>Lancaster, Ohio 43130 |
| For K.S. | Guardian ad Litem |
| CHRISTINA A. MCGILL<br>127 West Wheeling Street<br>Lancaster, Ohio 43130 | JESSICA L. MONGOLD<br>123 South Broad Street, Suite 206<br>Lancaster, Ohio 43130 |

*Wise, John, J.*

{¶ 1}  Appellant-Mother, S.S., appeals the February 1, 2017, Judgment Entry/ Orders of the Court of Common Pleas of Fairfield County, Ohio, Juvenile Division, denying her objections and upholding the Magistrate's Decision granting appellee, Fairfield County Child Protective Services, permanent custody of her child.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}  On May 30, 2014, K.S. (dob May 16, 2003) was placed in the temporary shelter custody of Fairfield County Child Protective Services (FCCPS).

{¶ 3}  On August 6, 2014, K. S. was found to be a dependent minor and placed in the temporary custody of FCCPS

{¶ 4}  K.S. has been adjudicated a dependent minor and placed in the temporary custody of FCCPS by the Fairfield County, Ohio Juvenile Court on three separate occasions: June 22, 2006, in Case No. 2006-AB-0070; June 26, 2012, in Case No. 2012-AB-0094; and August 6, 2014, in Case No. 2014-AB-0088.

{¶ 5}  As to initial concerns of the Agency regarding K.S., there were concerns for K.S. exhibiting emotional and psychological issues which result in aggressive behavior towards herself and others; and with her being physically assaultive to her mother, grandmother, a babysitter, and a teacher. K.S. has been diagnosed with disruptive behavior disorder not otherwise specified and borderline intellectual functions, provisional. (T. at 6). Mother had not followed through with consistent mental health or psychiatric services for said child; and Mother had admitted use of marijuana.

{¶ 6} Fairfield County Child Protective Services developed a case plan for Mother to remedy the problems that caused K.S. to be removed from the home. (T. at 20-21). Mother signed and agreed with the case plan.

{¶ 7} Part of Mother's case plan required her to participate in K.S.'s treatment as requested by her counselor and follow recommendations of service providers, including but not limited to family counseling and requested communication with any providers involved in K.S.'s treatment; demonstrate sobriety through screens for drugs and/or alcohol; establish stable and consistent housing; and complete a psychological evaluation and follow all recommendations.

{¶ 8} No case plan was developed for father because he has not had any contact with K.S. since May, 2014. (T. at 20).

{¶ 9} At the closing of the 2012 dependency case concerning K.S., which closed in September, 2013, K.S. was involved in ongoing mental health counseling due to past trauma K.S. has suffered. Mother admitted that this past trauma was caused by Mother's actions.

{¶ 10} When the initial report of concern in this case was received in March, 2014, K.S. was no longer in mental health counseling. Mother admitted that K.S. was not discharged from treatment, but that K.S. refused to go to counseling because she did not like it. Mother indicated that K.S. was having behavior issues during the time between September, 2013, and March, 2014, but that Mother did not force K.S. to go to counseling because "if [K.S.] decides not to do something, it doesn't happen."

{¶ 11} Reviews were held for K.S. on November 10, 2014, February 9, 2015, August 10, 2015, and February 22, 2016.

{¶ 12} Annual reviews were held on May 6, 2015, and May 2, 2016.

{¶ 13} On August 4, 2015, FCCPS filed a motion requesting that the temporary custody of K.S. be amended to an order of permanent custody. An amended motion requesting that the temporary custody of K.S. be amended to an order or permanent custody was filed by FCCPS on August 14, 2015.

{¶ 14} On February 2, 2016, FCCPS filed a motion requesting that the temporary custody of K.S. with FCCPS be terminated and K. S. be returned to the custody of Mother and the motion for permanent custody be dismissed.

{¶ 15} On July 22, 2016, FCCPS again filed a motion requesting that the temporary custody of K.S. with FCCPS be amended to an order of permanent custody.

{¶ 16} On September 27, 2016, a pretrial was held on the motion for permanent custody.

{¶ 17} On October 18, 2016, an oral hearing on the motion for permanent custody was held. Present for the hearing was Brittany Karocki, Assistant Prosecuting Attorney; Karla Nelson, Court Program Manager for FCCPS; Danielle DiMatteo, Case Worker for FCCPS; Ashleigh Duffy, Case Worker in Training for FCCPS; S.S., Mother of K.S.; Mark Ort, Attorney for Mother; Christina McGill, Attorney for K.S.; and Jessica Mongold, Guardian ad Litem.

{¶ 18} R.G., father of K.S. received notice of the hearing by certified mail on August 11, 2016, but failed to appear.

{¶ 19} At the hearing, the trial court swore in and heard testimony from Mother S.S.; Danielle DiMatteo, FCCPS; and Jessica Mongold, Guardian ad Litem.

{¶ 20} The trial court heard the following testimony and evidence:

{¶ 21} Upon being placed in FCCPS' custody in May, 2014, K.S. was placed in a therapeutic foster home. She remained in this home until September, 2014.

{¶ 22} In September, 2014, K.S. was then placed into a different therapeutic foster home, where she remained until October, 2014.

{¶ 23} It was determined that K.S. needed a more restrictive setting than a therapeutic foster home could provide for her.

{¶ 24} In October, 2014, K.S. was placed at the Children's Resource Center, a residential treatment facility in Mt. Vernon, Ohio, where she remained until December 30, 2014.

{¶ 25} While K.S. was placed at the Children's Resource Center, she was leaving the facility without permission and was aggressive with staff/peers. It was determined that K.S. needed a more secure facility than the Children's Resource Center was able to provide.

{¶ 26} From December 30, 2014 until September, 2015, K.S. was placed at Beechbrook, a residential treatment facility that was more secure.

{¶ 27} K.S. made improvements in her behavior and mental health treatment while at Beechbrook and was able to be placed on visitation status with her Mother in September, 2015.

{¶ 28} K.S. was placed with her Mother on visitation status from September, 2015 until May, 2016.

{¶ 29} K.S. engaged in self-harm at least three (3) times during her placement with Mother from September, 2015, to May, 2016:

In February, 2016, K.S. used a belt to choke herself.

In April, 2016, K.S. used the glass from a mirror to cut herself.

In May, 2016, K.S. had a knife and threatened to cut herself.

{¶ 30} On May 20 or 21, 2016, the caseworker and probation officer for K.S. were called to the school by both Mother and the school as K.S. was refusing to leave the school with Mother. K.S. was not able to ride the bus due to previous behavior issues on the bus.

{¶ 31} During the time the caseworker and probation officer were present at the school, K.S. made suicidal comments and was taken to Fairfield Medical Center to be evaluated.

{¶ 32} Mother expressed concern to the caseworker at the time of this May, 2016, incident that K.S. could not return home due to Mother's concern for the other children in her home, and that she would have to choose between K.S. and her other children.

{¶ 33} K.S. was sent from Fairfield Medical Center to Belmont Pines for an acute stay. The recommendation from Belmont Pines was that K.S. be placed in a residential treatment facility.

{¶ 34} K.S. was then placed in Adriel, a residential treatment facility, from May, 2016, until September, 2016. K.S. was moved from Adriel due to concerns for her behaviors and aggression toward staff and other residents.

{¶ 35} In September, 2016, K.S. was transferred to Bell Fare, a more secure residential facility, where she was still placed at the time of the hearing.

{¶ 36} K.S. has run away from residential facilities and is physically aggressive to staff and peers in the treatment facilities in which she has been placed.

{¶ 37} K.S. has been placed in juvenile detention while in the residential treatment facilities for charges of making false alarms, assaulting a staff member and assaulting a peer.

{¶ 38} The current recommendation for K.S. by her mental health treatment providers is for her to be in a residential treatment facility.

{¶ 39} Mother testified that, while she believes that K.S. initially needed to be in a treatment facility, she feels that the treatment facility was only necessary at that time because Mother was then 8 months pregnant and could not handle K.S.'s behaviors due to her condition in May, 2016. Mother testified that she felt she could manage K.S.'s current behaviors at home through outpatient treatment, but then agreed that K.S. is currently in the "place she needs to be", that being residential treatment.

{¶ 40} Mother further recognized that K.S. is a potential threat to the other children in her home due to her behaviors. Mother has a four (4) year old and four (4) month old in her home full-time, and a seven (7) year old at the home part-time. Mother testified that if K.S. were home and began to have behaviors, the younger children could just remove themselves from the situation.

{¶ 41} Mother also testified that K.S. needed to institutionalized at the present time, and that she was could not afford to pay for the portion of the cost of care not covered by Medicaid, which was now being paid by FCCPS. (T. at 70-75).

{¶ 42} With regard to participation in K.S.'s treatment, Mother has participated in said treatment at the direction of K.S.'s treatment team and maintained contact with providers since K.S. has been in residential treatment. With regard to participation in family counseling, Mother is involved with family sessions with K.S.

{¶ 43} FCCPS referred Mother to Integrated Services for Behavioral Health for a psychological evaluation. Mother completed the psychological evaluation on August 31, 2016.

{¶ 44} The psychological evaluation of Mother recommended that Mother engage in individual counseling, that Mother would benefit from parenting education or coaching, and that Mother would benefit from seeking medical attention regarding memory issues.

{¶ 45} With regard to visitation with K. S., Mother currently has visitation with K. S. in her treatment facility. Mother has seen K. S. four (4) times since May, 2016: zero times in May, 2016; zero times in June, 2016; twice in July, 2016; once in August, 2016; once in September, 2016; and zero times in October, 2016.

{¶ 46} Following the presentation of all evidence and testimony to the trial court, Jessica Mangold, Guardian ad Litem, testified. She testified that her opinion had not changed with regard to her written report, and that she still supported the granting of permanent custody of K.S. to Fairfield County Child Protective Services.

{¶ 47} On November 17, 2016, the Magistrate's Decision was filed granting permanent custody of K.S. to Fairfield County Child Protective Services. The trial court adopted and approved the Decision on the same day.

{¶ 48} On November 23, 2016, Mother filed Objections to the Magistrate's Decision, arguing that said Decision was in violation of R.C. §2151.414.

{¶ 49} On February 1, 2017, the trial court filed its Judgment Entry/Orders on Objection to Magistrate's Decision, overruling Mother's objections and adopting the decision of the Magistrate.

{¶ 50} Appellant-Mother now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶ 51} "I. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE TO SUSTAIN AN ORDER AWARDING THE PERMANENT CUSTODY OF K.S. TO FAIRFIELD COUNTY CHILD PROTECTIVE SERVICES.

{¶ 52} "II. THE TRIAL COURT ERRED IN THE APPLICATION OF OHIO REVISED CODE §§2151.414 AND 2151.415, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION OF THE UNITED STATES, AND THE DUE PROCESS CLAUSE OF THE OHIO CONSTITUTION."

**I., II.**

{¶ 53} Appellant herein argues the trial court erred in awarding Appellee permanent custody of the children. We disagree.

{¶ 54} As stated by this Court in *In the Matter of: S.W.,* 5th Dist. Stark No. 2016CA00221, 2017-Ohio-807, ¶12:

> [T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

{¶ 55} An award of permanent custody must be based upon clear and convincing evidence. R.C. §2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

### *Standard of Review*

{¶ 56} The Ohio Supreme Court has delineated our standard of review as follows:

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, *Frate v. Rimenik*, 115 Ohio St. 11, 152 N.E. 14, and *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954).

{¶ 57} A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins*, 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

{¶ 58} In *Cross*, the Supreme Court further cautioned:

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. See Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768, and 161 Ohio St. at 477-478. (Emphasis added).

### *Requirements for Permanent Custody Awards*

{¶ 59} R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶ 60} Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 61} Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

*Parental Placement within a Reasonable Time – R.C. §2151.414(E)(1).*

{¶ 62} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. §2151.414(E). The statute also indicates that if the court makes a finding under R.C. §2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. §2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145 (Apr. 10, 1991).

{¶ 63} R.C. §2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable

period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

{¶ 64}  R.C. §2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion.  These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶ 65} In this case, the trial court made its permanent custody findings pursuant to R.C. §2151.414(E)(1) and/or (16), since Mother had not remedied the conditions which led to K.S.'s removal, and Mother was also unable to meet the special needs of the child.

{¶ 66} As set forth above, the trial court's findings are based upon competent credible evidence.  The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial.  The trial court was in the best position to determine the credibility of the witnesses.

{¶ 67} In the case *sub judice*, the trial court found by clear and convincing evidence that K.S. had been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two month period pursuant to R.C. §2151.414(B)(1)(d).  Mother does not challenge the trial court's finding.

{¶ 68} This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. No. 2008CA00118, 2008–Ohio–5458, ¶ 45.

{¶ 69} However, even if we consider Mother's arguments, we find the trial court did not err in determining the child cannot be placed with Mother at this time or within a reasonable period.

{¶ 70} K.S. has been involved with the Agency since 2006. (T. at 6). K.S. has been found to be dependent, and in the temporary custody of the Agency, on two prior occasions. (T. at 18-19). In this case, K.S. has been in the emergency shelter care custody of the Agency since May 30, 2014, and the Agency's custody on July 29, 2014, and in the temporary custody of the Agency since August 6, 2014, when she was found to be dependent. (T. at 18).  K.S. has been diagnosed with Disruptive Behavior Disorder, not otherwise specified, and borderline intellectual functions, provisional. (T. at 6). K.S. has required and will continue to require extensive residential treatment. (T. at 7). The cost of the residential treatment is approximately $131, 000.00 per year, which Mother cannot afford to pay. (T. at 72-73). Mother is unable to control K.S. when she is in Mother's custody. (T. at 30). K.S. has engaged in self-harming behavior on three occasions while in Mother's custody. (T. at 30-31). Mother agreed that at the present time, K.S. should not be home with her. (T. at 75). Mother also admitted that she cannot provide the help K.S. needs. (T. at 92).

{¶ 71} Based upon the foregoing, as well as the entire record in this case, the Court properly found K.S. could not or should not be returned to Mother within a reasonable time.

### Best Interests – R.C. §2151.414(D)(2)(a) – (d)

{¶ 72} Here, the trial court found that R.C. §2151.414(E)(1) and (16) applied in this case.

**{¶ 73}** While the evidence demonstrated the Mother has been compliant with her case plan, the conditions which led to K.S. being removed from the home have not been remedied. (T. at 24). Despite offering numerous services, Mother was unable to mitigate the concerns that led to the child's removal.

**{¶ 74}** K.S. attempted to harm herself three separate times while under Mother's care, despite the treatment she was receiving. (T. at 30). Mother admitted she could not bring K.S. home at the present time because she still needed to be treated in a residential facility, and she could not afford to cover the cost. (T. at 72-73, 75).

**{¶ 75}** In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

### *Other relevant factors – R.C. 2151.414(E)(16).*

**{¶ 76}** R.C. §2151.414(E)(16) provides that the trial court may consider "Any other factor the court considers relevant."

**{¶ 77}** In the case at bar, the court noted that as of the time of the hearing, Mother was unable to care for K.S.'s special needs.

**{¶ 78}** In addition to the above findings, the trial court found that K.S. has been in the agency's custody for more than two years and no longer qualifies for temporary custody; K.S. does not meet the requirements for a PPLA because she was only 13 years old at the time of the hearing; and no relative or other interested person has filed for legal custody of K.S.

{¶ 79} Therefore, based on the aforementioned facts, the trial court did not abuse its discretion when it found by clear and convincing evidence that R.C. §2151.414(E)(1) and (16) were applicable to Mother.

### *Conclusion*

{¶ 80} For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶ 81} We further find that the trial court's decision that permanent custody to FCCPS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶ 82} Additionally, based on the foregoing, this Court finds that the trial court's application of R.C. §2151.414 was not in error.

{¶ 83} We further find no support for Appellant's argument that the trial court erred in its application of R.C. §2151.415(D)(4) in this case, as it was not the basis for the granting of permanent custody in this case.

{¶ 84} Because the evidence in the record supports the trial court's judgment, we overrule Mother's assignments of error, and affirm the decision of the Fairfield County Court of Common Pleas, Juvenile Division.

**{¶ 85}** With these facts, it is impossible for this Court to second guess the trial court. As stated above, credibility, reliability, and forthrightness are within the province of the trier of fact.

**{¶ 86}** Upon review, we find sufficient clear and convincing evidence to support the trial court's decision to grant Appellee permanent custody of the child.

**{¶ 87}** Assignment of Error I is denied.

**{¶ 88}** The judgment of the Court of Common Pleas, Juvenile Division, of Fairfield County, Ohio, is hereby affirmed.

By: Wise, John, J.

Delaney, P. J., and

Baldwin, J., concur.

JWW/d 0628